## Case No. 6,879.

### HUNNEWELL v. BURLINGTON & M. R. R. CO. et al.

[3 Dill. 313.][1]

#### Circuit Court, D. Nebraska. 1874.[2]

CONSTRUCTION OF LAND GRANT TO THE BURLINGTON RAILROAD COMPANY — TAXABILITY OF ITS LANDS—ACT JULY 2, 1864, § 21, CONSTRUED.

1. The land grant to the Burlington and Missouri River Railroad Company (Act July 2, 1864, §§ 17, 20; 13 Stat. 356, 364), is not subject to the proviso in section 3 of the original act of July 1, 1862 (12 Stat. 489), giving to the public the right of settlement and pre-emption if the lands granted be not sold or disposed of within three years after the entire line of the road is completed.

2. Where the lands had not been fully earned by the railroad company in 1871, and the cost of surveying paid as required by section 21 of said act of July 2, 1864, before the period of assessing lands for 1872 had passed, it was held that the lands were taxable, although the company did not pay the local land officer's fees until a few days after the period for making the assessment for 1872 had expired.

[See note at end of case.]

This is a bill [by Horatio H. Hunnewell, suing for himself and others] to restrain the collection of taxes levied upon the lands granted by congress to the defendant railroad company. It is filed by the plaintiff, as a stockholder of the company, after he had represented to its board of directors the impropriety of paying the taxes, and requested them to bring an action to enjoin their collection, or otherwise take efficient measures to protect it therefrom, and after they had declined to do so, because it would be a difficult and unpopular step to take. The taxes complained of were, in 1872, levied by the several counties made defendants [Cass County and others], in which the lands are

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
[2] [Affirmed in 22 Wall. (89 U. S.) 464.]

situated, and were, in point of form, regular in all respects. They are sought to be avoided on the ground that the lands upon which they were levied were not taxable, on account of certain provisions of the acts by which they were granted to the company. The provisions of these acts of congress, upon which the plaintiff's claim rests are the 3d and 13th sections of the act of 1862 (12 Stat. 489, 492), and sections 18, 19, 20, and 21 of the act of 1864 (13 Stat. 356, 364). The work of constructing the railroad was commenced on the 4th of July, 1869, at Plattsmouth, on the Missouri river, and was prosecuted with such vigor that it was completed to a junction with the Union Pacific Railroad, at Kearney Junction, in the fall of 1872, and its last section was, on the 4th of November of that year, accepted by the commissioners. Early in its enterprise the company mortgaged its lands to raise the means, or a part thereof, with which to carry forward the work, to which purpose those means were applied; and it has applied the proceeds arising from the sale of the lands, and has pledged the proceeds thereof, to that purpose. On the 7th of March, 1872, the company paid to the United States the cost of surveying the lands opposite the first one hundred and forty miles of the road, including field work and office work, and, on the 6th of May, 1872, paid the cost of surveying the lands opposite the remainder of said road. On the 19th and 20th days of April, and the 1st and 2d days of May, of the same year, the fees of the register and receiver in respect to said lands were paid. The revenue laws of the state require the assessors to meet for the purpose of equalizing their assessments on the first Monday in April, and to return their rolls to the county clerk on the second Monday of that month, and the county commissioners to sit as a board of equalization on the third Monday and for the two succeeding days. The sessions of said board for 1872 closed on the 17th day of April. The proper duplicates and warrants to collect and enforce the tax were placed in the hands of the treasurers of the several counties which are impleaded in the bill, and, when the injunction was allowed, they were about to sell the lands. About one-half of the taxes go to the state. The cause is before the court on final hearing on the bill, answer, replication, and proofs. This suit relates to lands along the first one hundred and forty miles of the company's road. Another suit by the same plaintiff relates to lands along the residue of the road.

James M. Woolworth, for plaintiff.

Clinton Briggs, G. B. Scofield, Bowen & Laird, and Brown & England, for the Counties.

DILLON, Circuit Judge. The taxes for the year 1872 upon lands granted by congress to the Burlington and Missouri River Railroad Company in Nebraska, and levied thereon by authority of the state, are sought to be restrained upon two principal grounds. One of these is temporary, and applies alone to the taxes of 1872; the other is permanent, and applies, if well founded, to the lands so long as they shall remain unsold and not disposed of by the railroad company. We notice the last objection first, for if it is sound the other is immaterial.

The Burlington Company's grant is contained in sections 19 and 20 of the act of July 2d, 1864 (13 Stat. 356, 364), this being the amendatory act under which, in connection with the original act of July 1, 1862, the Union Pacific Railroad and its branches were constructed.

Section 3 of the original act of 1862 made a grant of lands to the Union Pacific Railroad Company, within certain limits on each side of its road, with a proviso that "all such lands so granted by this section, which shall not be sold or disposed of by said company within three years after the entire road shall have been completed, shall be subject to settlement and pre-emption like other lands, at a price not exceeding one dollar and twenty-five cents per acre, to be paid to said company." This proviso was under consideration by the supreme court of the United States in the case of Kansas Pacific R. Co. v. Prescott, 16 Wall. [83 U. S.] 603. It is maintained by the plaintiffs that the effect of that proviso, as construed by the supreme court, is to exempt from taxation all lands granted to the companies by the acts of 1862 and 1864, which have not been actually sold or otherwise absolutely disposed of; and it is also maintained that the mortgage of the lands by the company is not such a "sale or disposition" of them as will defeat the right to settle upon and pre-empt them. After a careful consideration of the language of sections 18, 19, and 20 of the act of 1864, upon which the rights of the Burlington Company rest, and a comparison of it with the language used in respect to the main company and its branches, my judgment is that the grant to the Burlington Company is an independent grant, not made by referring to the the grants to the other companies, and, therefore, that section 3 of the act of 1862, whatever may be its scope and effect, has no application to the Burlington Company. This last road was not a part of the original scheme; it was to have no government bonds; and was simply aided as many other roads in Iowa, Wisconsin, Minnesota, and other states had been, by a grant of public lands. As to the effect of the proviso in section 3 upon the status of lands to which it applies, see the case of Union Pacific R. Co. v. McShane [Case No. 14,382], decided at the same time with the present case.

The other alleged ground of exemption from taxation is that, at all events, the lands were not taxable for 1872, because the company's right to them was not perfected until

after the time when, under the laws of the state, property can be taxed. The proofs show that the road of the Burlington Company had been constructed and accepted as being complete for the distance of one hundred and forty miles by December 13, 1871. The balance of the distance, fifty and three-fourths miles, was accepted as complete November 4, 1872. On the 7th day of March, 1872, the company paid all the costs of surveying the lands, including field work and office work, for the first one hundred and forty miles, and the cost of surveying the balance of the lands on the 6th day of May, 1872.

The plaintiffs claim that, under the revenue laws of the state, no property can be taxed which becomes taxable after the third Monday in April, and that this time ended by the 17th day of that month, in 1872, when the board of equalization closed its session. And their further claim is that, as the register's and receiver's fees were not paid until the 19th day of April, 1872, the company had no taxable interest in the land until this date, which was too late to make the land taxable for that year; and to support this position the case of Kansas Pacific R. Co. v. Prescott, 16 Wall. [83 U. S.] 603, is relied on.

Section 21 of the act of 1864 is in these words: "Before any land granted by this act shall be conveyed to any company or party entitled thereto under this act, there shall first be paid into the treasury of the United States the cost of surveying, selecting, and conveying the same by the said company or party in interest, as the titles shall be required by said company; which amount shall, without any further appropriation, stand to the credit of the proper account, to be used by the commissioner of the general land office for the prosecution of the survey of the public lands along the line of said road; and so, from year to year, until the whole shall be completed, as provided under the provisions of this act."

The proofs show that the lands for the first one hundred and forty miles were fully earned in 1871, and that the company was then entitled to patents therefor, on the payment of "the cost of surveying, selecting, and conveying the same," and that this payment was made on March 7, 1872; and if the right of the company to the lands was then perfect, it is conceded that, if taxable at all, they were taxable for the year 1872. It is said, however, that because the register's and receiver's fees were not paid until April 19, the lands were not before that time taxable.

It does not appear from the proofs when the certificates and patents were dated or delivered to the company, and, whatever may be the facts in this regard, I am of opinion that the fees to the registers and receivers of the local land offices, under the act of July 1, 1864 (13 Stat. 335), are not embraced within those required to be paid by the aforementioned section 21 of the act of 1864. These are fees for "locating," not for "selecting" and "conveying," the land. But, again, it may be remarked that the cost of surveying was paid in time to make the lands taxable; the work of selecting the lands was done by the company without, so far as shown, any expense to the government, and for the cost of conveying it does not appear that the government makes or has any claim.

The result is that the bill in No. 284, which relates to counties along the first one hundred and forty miles of the defendant company's road, must be dismissed, and the bill in the second case, as to lands west of the west line of range 7, in Clay county, where the road was not completed until the fall of 1872, must be sustained, and the injunction made perpetual; but as to lands east of said west line of range 7, in Clay county, the bill must be dismissed. Decrees accordingly.

[NOTE. An appeal was then taken by the plaintiff to the supreme court, when the decree was affirmed in an opinion by Mr. Justice Miller, who said that under the uncertainty which existed as to what the "cost of conveying" is, which is mentioned in the act of July 2, 1864, and there being no decision of the state supreme court or well-settled practice as to the meaning of the Nebraska statute fixing the last day to assess lands for taxation, the court would refuse to enjoin the county officers from collecting the tax. 22 Wall. (89 U. S.) 464.]